# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 4661 | **DATE** | 9/5/2001 |
| **CASE TITLE** | Michael J. Corbett vs. Terrance White, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendants' motion to dismiss [16] is granted in part and denied in part, as set forth in the accompanying Memorandum Opinion and Order. Plaintiff's pending motion for summary judgment [6], filed on November 21, 2000, is denied because it was superceded by a later motion for summary judgment [13], which this court denied on December 6, 2000.

(11) ■ [For further detail see order attached to the original minute order.]

No notices required, advised in open court.
No notices required.
Notices mailed by judge's staff.
✓ Notified counsel by telephone.
✓ Docketing to mail notices.
Mail AO 450 form.
Copy to judge/magistrate judge.

courtroom deputy's initials

number of notices
SEP 17 2001 date docketed
docketing deputy initials

FILED FOR DOCKETING
01 SEP 14 AM 8:54

Date/time received in central Clerk's Office
date mailed notice
mailing deputy initials

Document Number

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL J. CORBETT, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 00 C 4661 |
| v. | ) | |
| | ) | |
| TERRANCE WHITE, et al., | ) | Judge Joan B. Gottschall |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Michael Corbett brought suit against City of Markham police officers Terrance White, Tim Tyler, and other unknown Markham officers, in both their individual and official capacities. Corbett alleges that the defendants are liable under 42 U.S.C. § 1983 for unlawful arrest, malicious prosecution, improper search and seizure, violation of his right to freedom of speech, false imprisonment, intimidation, and physical abuse. Defendants have moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] Because defendants attached to their motion the state court transcript, an exhibit concerning a matter outside of the pleadings, Corbett sought to obtain a complete copy of the transcript and to convert the motion into a motion for summary judgment. Defendants offered to file a complete copy of the transcript, but maintained that their motion was a motion to dismiss rather than a motion for summary judgment because it attacked the sufficiency of the pleadings themselves. The court required defendants to file a complete copy of the state court transcript, but did not indicate whether it would treat the motion

---

[1] Defendants' motion to dismiss was actually filed prior to the filing of Corbett's First Amended Complaint. It appears, however, that defendants intended for the motion to apply to the First Amended Complaint, which the defendants apparently had in their possession before it was filed with the court. (Transcript of Proceedings, 1/31/01). The parties have proceeded as if the motion to dismiss is applicable to the First Amended Complaint. Thus, the court will consider the motion with respect to the First Amended Complaint.

as a Rule 12(b)(6) motion to dismiss or a Rule 56 motion for summary judgment. (Transcript of Court Proceedings, 1/4/01). For the reasons set forth below, the court treats the defendants' motion as a motion to dismiss. Defendants' motion is granted in part and denied in part.

## Background

The following facts are taken from plaintiff's First Amended Complaint and other materials submitted by plaintiff in connection with this motion. Corbett's claims arise out of events occurring on and after August 3, 1999. On that date, plaintiff alleges that he was pulled over by defendant White for speeding while driving to work. White asked Corbett for his driver's license, proof of insurance, and registration. Corbett, having lost his wallet, could not produce his driver's license. He gave White proof of insurance, a title to the car, a bill of sale for the vehicle, and a replacement VISA banking card that Corbett had received. Because Corbett did not have a driver's license with him, White asked Corbett to follow him to the station where he could post a cash bond. At the station, Corbett told White that he had seen White turn at a red light without stopping. White then raised his voice, stood very close to Corbett, and "practically screamed" at Corbett: "[N]ot only did I stop, I used my turn signal and you didn't and for mouthing off to me, I'm going to give you a ticket for that too." (Am. Compl. at ¶ 10). Corbett then backed away and sat on a bench, softly blurting out an obscenity. White asked him to repeat himself, and Corbett repeated the obscenity louder. White then told Corbett "to stand up, take off your hat, your belt, and your shoes, your [sic] under arrest." (Am. Compl. at ¶ 12).

Corbett alleges that defendant Tyler then entered the room and tried to convince Corbett to apologize to White. Corbett refused. At one point, Corbett alleges, Tyler raised his voice when speaking to Corbett, and then Corbett uttered more profanities. Tyler then told White to

2

"hook him up," and White handcuffed Corbett to the bench he was sitting on. (Am. Compl. at ¶ 15). Corbett alleges that White had Corbett's VISA card in his hands. Corbett alleges that he had put the VISA card under the visor of his car, leading him to conclude that the defendants must have searched his car. Corbett told White: "[Y]eah and you illegally searched my vehicle too." (Am. Compl. at ¶ 17). White then filled out the bond papers and removed the handcuffs so that Corbett could sign the papers. White then told Corbett that his car had been towed and handed Corbett two criminal complaints, one for assault and one for battery. The assault complaint alleged that Corbett told White that he would "kick [White's] ass." (Am. Compl. at ¶ 21). The battery complaint alleged that Corbett "butted his chest against [White's] chest." (Am. Compl. at ¶ 21). White then opened the door and told Corbett that he could leave. Corbett alleges that he had to walk two miles to retrieve a bill of sale and proof of insurance for his car, and then walk back in order to obtain a tow release. After Corbett retrieved his car, he went to work.

Corbett was required to appear for a court date on January 6, 1999. According to Corbett, he was late for the court date because of severe weather, car problems, and difficulties in renting a car under the weather conditions. When Corbett arrived at court, he was told that the judge had gone home for the day and that a warrant was issued for his arrest as a result of his failure to appear. On January 7, Corbett surrendered to the Clerk of the Sixth Judicial Circuit of Cook County. Corbett then appeared before the judge, who issued a $10,000 bond ($1000 cash). Corbett, unable to pay the bail himself, requested a phone call. Corbett was then transferred to Cook County Jail before getting a phone call. On the bus, Corbett alleges, he was subjected to verbal and physical abuse (being "struck hard" on the back of the head) by another prisoner.

(Am. Compl. at 4-5). Corbett alleges that he was subjected to further similar abuse at Cook County Jail. Corbett alleges that he was finally given the opportunity to place a phone call at the jail, some ten and a half hours after he was arrested. During processing, Corbett alleges that he was subjected to certain humiliating processing procedures. He also alleges that the person attempting to make bail for him was repeatedly informed that the jail did not know what the bail was and that they could not confirm whether Corbett was being held there. Corbett alleges another incident of physical abuse taking place in his cell that night. Corbett was eventually released on bail on January 8, approximately 36 hours after his arrest. The state voluntarily dismissed the assault charge, with leave to reinstate (S.O.L.'d). Corbett formally demanded trial on that charge. The battery charge proceeded to trial, where a jury found Corbett not guilty. Corbett then brought the present action.

## Analysis

Defendants filed a motion to dismiss pursuant to Federal Rule 12(b)(6), and attached excerpts from the transcript of the state criminal proceedings. Corbett sought to convert the motion into a motion for summary judgment, pursuant to the last sentence of Rule 12(b). Along with his response to the motion, Corbett filed a Statement of Uncontested Fact, as well as a number of exhibits in support thereof. Because the court finds that the defendants' motion attacks the sufficiency of the allegations in the complaint, rather than the sufficiency of the evidence Corbett has produced to support his claims, the court will treat the motion as a motion to dismiss under Rule 12(b)(6). Although Rule 12(b) instructs that a 12(b)(6) motion should be converted to a motion for summary judgment where "matters outside the pleading are presented to and not excluded by the court," the court may take judicial notice of matters of public record

without converting a 12(b)(6) motion into a motion for summary judgment. *See Anderson v. Simon*, 217 F.3d 472, 474-75 (7th Cir. 2001); *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994); *Collier v. Township of Cicero*, No. 98 C 8071, 1999 WL 1046414, at *3 (N.D. Ill. Nov. 10, 1999). Here, the only evidence attached to the defendants' motion was an excerpt from the state court transcript. These state court records are public records. *See Collier*, 1999 WL 1046414, at *3. Thus, the court will treat defendants' motion as a motion to dismiss, and evaluate the sufficiency of the pleadings in accordance with the standards for a motion to dismiss under Rule 12(b)(6).

The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide its merits. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). A court should dismiss a claim only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint." *Cook v. Winfrey*, 141 F.3d 322, 327 (7th Cir. 1998) (citations omitted). The court must accept all well-pleaded factual allegations in the light most favorable to the plaintiff. *Colfax Corp. v. Illinois State Toll Highway Auth.*, 79 F.3d 631, 632 (7th Cir. 1996). In a case such as this, where plaintiff is not represented by counsel, the normally "relaxed and informal" pleading standards of the Federal Rules will be interpreted "ultraliberally" when deciding whether plaintiff has adequately stated claims against the defendants. *See Murrey v. United States*, 73 F.3d 1448, 1452 (7th Cir. 1996).

Plaintiff's complaint does not clearly delineate the claims he is advancing. Nonetheless, based on a broad reading of the facts and the legal theories that plaintiff attempts to allege in his complaint, the court concludes that plaintiff asserts the following violations of § 1983: false arrest, malicious prosecution, improper search and seizure, violation of his right to free speech,

false imprisonment, intimidation, and physical abuse.[2] The court will address each of these claims in turn.

*False Arrest*

In order to prevail on a claim for false arrest, the plaintiff must prove that the police arrested him without having probable cause. *Jones by Jones v. Web*, 45 F.3d 178, 181 (7th Cir. 1995). An officer has probable cause to arrest if "the facts and circumstances within the officer's knowledge and of which the officer has reasonably trustworthy information are sufficient to warrant a prudent person in believing the suspect has committed or is committing an offense." *United States v. Mounts*, 248 F.3d 712, 715 (7th Cir. 2001). Even without considering Corbett's guilty pleas in state court as to the traffic violations, Corbett's complaint fails to state a claim for false arrest. Corbett admits that White had probable cause to pull him over and issue him a ticket for speeding. Corbett further admits that he was unable to produce a driver's license when he was pulled over by defendant White, thus giving White probable cause to believe that Corbett had committed a misdemeanor. *See* 625 ILCS 5/6-112. Illinois law is perfectly clear that an officer has probable cause to make a custodial arrest when a driver fails to produce a valid driver's license at the scene of a lawful stop of the automobile. *See Lanigan v. Village of East Hazel Crest*, 913 F.Supp. 1202, 1208 (N.D. Ill. 1996); *People v. Perry*, 562 N.E.2d 618, 621-22 (Ill. App. Ct. 1990); *People v. Morrison*, 373 N.E.2d 520, 521-22 (Ill. 1978). Thus, the undisputed facts indicate that White had probable cause to arrest Corbett, and his false arrest claim necessarily fails.

---

[2] Although several of plaintiff's factual allegations could potentially serve as the basis for state law tort claims in addition to § 1983 claims, the amended complaint clearly attempts to allege only federal constitutional claims. (Am. Compl. at ¶ 1).

Corbett, in his response brief, argues that the false arrest claim is not based on the absence of probable cause for the traffic violations, but rather on the proceedings surrounding the assault and battery charges. (Resp. at 6). But White took Corbett into custody based on his failure to produce a valid driver's license. He was already in custody when White allegedly gave him a copy of the criminal assault and battery complaints against him. Probable cause for the arrest was present so long as the facts available to the officers at the time of the arrest were objectively sufficient to warrant a prudent person in believing that Corbett was committing *some* offense. *Mounts*, 248 F.3d at 714. Thus, any claim against defendants arising out of the assault and battery charges would necessarily be a malicious prosecution claim, discussed below, rather than a false arrest claim. Further, his later arrest in connection with the assault and battery charges was pursuant to a judge-issued warrant for failure to appear, and was not effectuated by defendants; therefore, it cannot serve as the basis for false arrest claims against these defendants.

*Malicious Prosecution and Due Process*

Corbett's complaint attempts to allege a claim for malicious prosecution based on White's act of swearing out criminal complaints for assault and battery, allegedly without probable cause. Because the words "malicious prosecution" do not appear in the Constitution, there has been some confusion regarding whether a claim of "malicious prosecution" rises to the level of a constitutional tort, actionable under § 1983. Seven Justices of the Supreme Court held in *Albright v. Oliver*, 510 U.S. 266 (1994) that there is no constitutional right not to be prosecuted without probable cause, but they disagreed as to the reasons. *See Newsome v. McCabe*, 256 F.3d 747, 750 (7th Cir. 2001). There are three arguable constitutional hooks on which to hang a "malicious prosecution" claim – substantive due process, the Fourth

7

Amendment, or procedural due process. One of the seven Justices (Souter, J.) analyzed malicious prosecution under substantive due process terms and found that Albright's claim failed because he did not argue that the defendant police engaged in egregious conduct. The four Justice plurality (Rehnquist, C.J., joined by O'Connor, Scalia & Ginsburg, JJ.) rejected substantive due process as the basis for a constitutional malicious prosecution claim. Those four Justices concluded that malicious prosecution involves questions of probable cause, which are solely the province of the Fourth Amendment. Under this interpretation, a plaintiff would have a claim only if he can establish that his arrest (seizure) was unlawful. If probable cause existed at the time of the arrest, then no further constitutional claim was presented. Two other Justices (Kennedy, J., joined by Thomas, J.) found that traditional, procedural due process concerns are implicated by a malicious prosecution claim. Under this interpretation, a plaintiff would have a claim if the person seized did not have an adequate opportunity to defend himself in the criminal prosecution and did not have an adequate opportunity to obtain relief in state court. Since Albright could have brought a state law claim of malicious prosecution, he was given due process of law. Hence, they concluded, there was no need to invoke § 1983.

As the Seventh Circuit has recently interpreted the divided opinion in *Albright*, a plaintiff may not state a § 1983 claim for "malicious prosecution" if the plaintiff could satisfy the elements of the state law tort of malicious prosecution. *Id.* at 751. This is because a "malicious prosecution" claim based on the theory of due process is necessarily "knocked out" where the plaintiff has an opportunity to pursue a remedy in state court. If state law recognizes a malicious prosecution tort, and plaintiff had an opportunity to obtain relief in state court under that theory, then plaintiff has been afforded all the process that was due. In this case, if Corbett's allegations

8

are true, then he could have sued under Illinois state law for the tort of malicious prosecution. Thus, his § 1983 "malicious prosecution" claim, as such, must be dismissed.

The Seventh Circuit added, however, that a plaintiff may still be able to state a Fourth Amendment claim if probable cause did not exist at the time of the arrest. *Newsome*, 256 F.3d at 750. A plaintiff might also be able to state a due process claim "in the original sense of that phrase" if he did not receive a fair trial because, for instance, the prosecutors withheld material exculpatory details. *Id.* at 752. Here, the undisputed evidence indicates that there was probable cause to take Corbett into custodial arrest because he failed to produce a valid driver's license. His later arrest was also supported by probable cause, because it was made pursuant to a bench warrant issued for failure to appear. Thus, Corbett cannot maintain a Fourth Amendment claim.

Corbett has, however, alleged facts sufficient to support a traditional due process claim. He alleges that the officers swore out criminal complaints against him, even though they knew the complaints were false. A defendant's due process rights are violated where he is denied a fair trial because the prosecutors withhold material exculpatory evidence or details. *Brady v. Maryland*, 373 U.S. 83 (1963); *see also Newsome*, 256 F.3d at 751-52. Because the responsibility for a *Brady* injury generally lies with the prosecutors, police officers are usually not liable for such a violation. *Newsome*, 256 F.3d at 752. But there is an exception when the police are not forthcoming with the prosecutors, such as where the police fabricate some inculpatory evidence or conceal exculpatory evidence. In these situations, "[p]ressure must be brought to bear elsewhere." *Id.* Holding the police officers liable under § 1983 for such actions "holds out promise of both deterring and remediating violations of the Constitution." *Id.* Reading Corbett's complaint liberally, he has alleged that the defendants fabricated their

9

statements in the criminal complaints and did not reveal to the prosecutors what actually happened in the stationhouse. Thus, Corbett has stated a claim of procedural due process – a claim that he was denied a fair trial because defendants fabricated evidence and withheld exculpatory evidence from the prosecutors.

*Improper Search and Seizure*

Next, Corbett alleges that defendants violated his constitutional rights by conducting an improper search and seizure. In support, Corbett alleges that the defendants must have searched his car, because White had Corbett's VISA card in his hands at the stationhouse, after Corbett had placed the card in the visor of his car.

Defendants respond by arguing two separate exceptions to the general rule prohibiting warantless searches: 1) the search was lawful because it was conducted incident to the lawful arrest of Corbett; and 2) the search was lawful because it was an inventory search conducted pursuant to standard police procedures upon the impounding of Corbett's vehicle. However, questions of fact remain that preclude the court from finding, as a matter of law, that the alleged search was lawful under either exception. First, a search incident to a lawful arrest must be conducted contemporaneously with the arrest. *See, e.g., United States v. Queen*, 847 F.2d 346, 352-53 (7th Cir. 1988). It is not clear from the pleadings that the alleged search of the car took place roughly contemporaneously with the arrest. Indeed, defendants also advance the inventory exception, suggesting that the search may have been conducted after Corbett was already inside the stationhouse and the police made the decision to impound the car. If Corbett can prove those facts, then the search would not be sufficiently contemporaneous to fit the exception for searches incident to a lawful arrest. *See Preston v. United States*, 376 U.S. 364, 367-68 (1964) (search of

10

vehicle was not incident to a lawful arrest where defendants were already under arrest at the police station and the car was in police custody at a garage at the time of the search); *cf. United States v. Willis*, 37 F.3d 313, 318 (7th Cir. 1994) (search was sufficiently contemporaneous where it occurred "shortly after [the officer] had secured [the defendant] and well before [the defendant] was transported to the police station.").

As to the second exception, an inventory search must be conducted pursuant to standard police inventory procedures, designed to provide an accurate inventory, protect the arrestee's property, protect the police from danger, or prevent false accusations of theft. *See United States v. Sholola*, 124 F.3d 803, 818 (7th Cir. 1997). It is not clear from the pleadings that the alleged search was conducted pursuant to such standardized inventory procedures. None of the pleadings allege what inventory procedures are employed by the Markham Police Department, nor do they allege whether the search was conducted pursuant to such procedures. In short, the plaintiff could prove, consistent with the allegations of his complaint, that the search did not fit the inventory exception. Thus, Corbett adequately alleges a claim for the unlawful search of his vehicle.

### Right to Free Speech

Corbett also alleges a violation of his First Amendment right to freedom of speech. Corbett's complaint, when read broadly, appears to allege that he was charged with the assault and battery offenses in retaliation for his criticism of White's driving, for his criticism of the defendants' search of his car, and for the profanities he directed at defendants during processing at the stationhouse. Once White and Corbett got to the station, Corbett alleges that he verbally accused White of violating a traffic law. Corbett then alleges that White became angry, screamed

11

at Corbett, and threatened to give him an additional ticket. At that point, Corbett "blurted softly" an obscenity. After White made Corbett repeat the obscenity more loudly, White told plaintiff he was under arrest. Corbett also alleges that he criticized the defendants for illegally searching his car. Shortly thereafter, Corbett was handed criminal complaints for assault and battery. Reading these allegations broadly, they are sufficient to implicate First Amendment concerns. *See Rader v. Elliott*, No. 91 C 1434, 1992 WL 3717, at *3 (N.D. Ill. Jan. 7, 1992) (plaintiffs who verbally protested police action and were subsequently threatened, verbally abused, and arrested by police officers stated valid First Amendment claim). Whether the defendants here actually retaliated for Corbett's speech, or whether, instead, they simply charged Corbett with assault and battery because they had probable cause to do so, is a factual question that cannot be decided on this motion to dismiss.[3]

### *False Imprisonment*

Corbett next alleges that the defendants falsely imprisoned him. This claim is apparently based on his allegation that he was forced to appear in court several times to defend himself on the assault and battery charges, and his allegation that he was imprisoned for 36 hours on January 7-8, 1999, in connection with those charges. When he was arrested on January 7, it was pursuant to a bench warrant issued for failure to appear. The undisputed facts alleged in the pleadings clearly establish that Corbett did fail to appear as required, and that the arrest was pursuant to a

---

[3] Defendants also argue that Corbett's speech was not protected by the First Amendment because it consisted of "fighting words." This argument fails for two reasons. First, it was an argument first advanced by the defendants in their reply brief. The court will not consider such arguments where Corbett has not had an opportunity to respond. *See, e.g., Kastel v. Winnetka Bd. of Educ., Dist. 36*, 946 F. Supp. 1329, 1335 (N.D. Ill. 1996). Second, the argument obviously ignores Corbett's criticisms of the defendants for violating a traffic law and for illegally searching his vehicle. The court pretermits the issue of whether Corbett's profanities could conceivably be considered fighting words, since these statements plainly could not.

12

valid warrant. Under such circumstances, the plaintiff has not alleged a constitutional deprivation, because he was not deprived of liberty without due process of law. *See Baker v. McCollan*, 443 U.S. 137, 144 (1979) (so long as warrant complies with the requirements of the Fourth Amendment, detention pursuant to warrant cannot give rise to constitutional claim under § 1983). Thus, Corbett's false imprisonment claim fails insofar as it is based on his January 7 arrest and detention.

Corbett's argument that he was falsely imprisoned by being forced to appear in court to defend himself against the assault and battery charges is a clever one, and one to which the defendants fail to respond. Under Illinois law, false imprisonment occurs when a plaintiff's personal liberty or freedom of locomotion is unlawfully restrained. *Pechulis v. City of Chicago*, No. 96 C 2853, 1997 WL 461006, at *3 (N.D. Ill. Aug. 11, 1997). An assertion of legal authority can constitute confinement sufficient to establish a claim for false imprisonment. *See Pechulis*, 1997 WL 461006, at *4; Restatement (Second) of Torts § 41 (1965). Thus, it seems that Corbett could arguably establish a claim for false imprisonment by alleging that he was required to appear in court, or face the legal consequences of his failure to appear.[4]

In order to establish a claim for false imprisonment in Illinois, however, the restraint must be unlawful; false imprisonment claims cannot be supported by a detention made by virtue of legal process issued by a court or an official with jurisdiction to issue such process. *See, e.g., Snodderly v. R.U.F.F. Drug Enforcement Task Force*, 239 F.3d 892, 899-900 (7th Cir. 2001); *Arthur v. Lutheran Gen'l Hosp.*, 692 N.E.2d 1238, 1243 (Ill. App. Ct. 1998); *Jacobson v. Rolley*, 330 N.E.2d 256, 267 (Ill. App. Ct. 1975); *Liogas v. Lowenguth*, 1919 WL 1710, at *1 (Ill. App.

---

[4] Neither Corbett nor the defendants cite any case where such a theory of confinement has been advanced or considered by the court.

13

Ct. Nov. 1919) ("If the imprisonment is under legal process, but the action was begun and carried on maliciously and without probable cause, it is a malicious prosecution and not false imprisonment."). Thus, for instance, when an arrest is made pursuant to a facially valid warrant issued by a court with jurisdiction, the arrest itself cannot serve as the basis for a false imprisonment claim. If, however, the warrant was issued because the defendant intentionally and maliciously supplied false information to the court, then the plaintiff may maintain an action for malicious prosecution. Here, the act Corbett complains of is the initial decision of the defendants to swear out criminal complaints against him. After the prosecutor made the decision to charge Corbett with battery, he was required by the court to appear. Thus, under the undisputed facts alleged in Corbett's complaint, his "confinement" was the product of legal process issued by a court with proper jurisdiction. The act of swearing out the criminal complaints against Corbett may support a due process claim, as discussed above, but the later court orders requiring him to appear in connection with the charges were not unlawful. Corbett's claim for false imprisonment must be dismissed in its entirety.

*"Intimidation"*

At one point in his amended complaint, Corbett seems to allege a theory of recovery called "intimidation." (Am. Compl. at 3). The court is unable to discern from that description what constitutional deprivation Corbett is attempting to allege. Hence, any claim for "intimidation" is hereby dismissed.

*"Physical Abuse"*

Finally, Corbett alleges that he was subjected to physical abuse while detained on January

14

7-8 because of defendants' actions. This only constitutional claim that can be inferred from this allegation is a claim that Corbett's Eighth Amendment right to be free from cruel and unusual punishment was violated -- a claim that is easily dismissed in this case. Corbett makes no allegation that the defendants themselves physically abused him. Government officials are liable for the abuse inflicted by other inmates only where they act with "deliberate indifference" to the possibility of attacks. *See, e.g., Haley v. Gross*, 86 F.3d 630, 640-41 (7th Cir. 1996). Here, it is obvious from the alleged facts that defendants were not personally involved with Corbett's conditions of confinement and were not in a position to prevent any of the attacks. Clearly, then, these defendants cannot be held liable for the abuse inflicted on Corbett by the other, unidentified inmates. Corbett's claims for "physical abuse" must be dismissed.

## Conclusion

For the foregoing reasons, defendants' motion to dismiss is granted with respect to Corbett's claims for false arrest, false imprisonment, intimidation, and physical abuse. Defendant's motion is also granted with respect to Corbett's malicious prosecution claim, although the court finds that Corbett's allegations are sufficient to state a due process claim. Defendants' motion is denied as to all other claims.

ENTER:

JOAN B. GOTTSCHALL
United States District Judge

DATED: September 5, 2001