IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL J. CORBETT | ) |
| Plaintiff | ) 00cv4661 |
| v. | ) |
| TERRANCE WHITE, individually and in his official capacity as a Police Officer of the City of Markham, Illinois and TIM TYLER, individually, and in his official capacity as, a police officer of the City of Markham, Illinois and as a Police Officer of the State of Illinois and Unknown Markham Police officers, individually and in thier official capcity as Markham Police officers. | ) Hon. Judge Gottschall<br>) Magistrate Judge Shenkier |

FILED SEP 2 6 2001 JUDGE JOAN B. GOTTSCHALL UNITED STATES DISTRICT COURT

DOCKETED SEP 2 6 2001

## SECOND AMENDED COMPLAINT FOR DAMAGES
### JURY DEMANDED

**Introduction**

1. This is an action at law to redress the deprivation under color of statute, ordinance, regulation. custom, or usage of a right, privilege, and immunity secured to plaintiff by the First and Fourteenth Amendments to the Constitution of the United States (42 USC § 1983).

2. The jurisdiction of this Court is invoked under 28 USC §§ 1331, 1343(3), this being an action authorized by law to redress the deprivation under color of law, statute, ordinance, regulation, custom and usage of a right, privilege, and immunity secured to plaintiff by the First and Fourteenth Amendments to the Constitution of the United States.

3. During all times mentioned in this complaint, plaintiff, was, and still is, a citizen of the United States, and resided, and now resides, in the State of Illinois.

4. At all times mentioned here, defendant TERRANCE WHITE, (WHITE) was duly appointed and presently acting police officer in the Police Department of the City of Markham.

5. At all times mentioned here prior to <u>early March,1999</u> defendant TIM TYLER, (TYLER) was duly appointed and acting police officer in a supervisory capacity (Watch Commander with final decision making authority for that shift) in the Police Department of the City of Markham.

6. At all times mentioned here after <u>and including early March, 1999</u>, defendant TIM TYLER, (TYLER) was duly appointed and presently acting police officer in the Police Department of the State of Illinois.

7. During all times mentioned herein, the defendants, and each of them, separately and in concert, agreement and conspiracy with each other, acted under color and pretense of law, to wit, under color of the

statutes, ordinances, regulations, customs and usages of the State of Illinois. Each of the defendants here, separately and in concert, agreement and conspiracy with each other, engaged in the illegal conduct here mentioned to the injury of plaintiff and deprived plaintiff of the rights, privileges, and immunities secured to plaintiff by the First and Fourteenth Amendments to the Constitution of the United States and the laws of the United States.

Occurrence Allegation 1

8. The Plaintiff was on his way to work in Bensonville at about 5:00 A. M., when he was pulled over for speeding. He had just gotten off of I 57 at 159th St. and was going to I 294. WHITE ask the plaintiff for his drivers license, proof of insurance, and registration. The plaintiff had lost his wallet, however he showed WHITE proof of insurance, a title to the car and a bill of sale for the vehicle and a replacement visa banking card that the plaintiff had received. Because the plaintiff did not have his drivers license on him, he was asked to follow WHITE to the station where he would post a cash bond.

9. While following WHITE to the police station, they came to a red light where WHITE turned, however he did not stop at the light. The plaintiff remembers thinking "what am I supposed to do now asshole". The plaintiff then stopped at the light and proceeded to follow WHITE. Both arrived at the police station and the plaintiff parked his vehicle where WHITE directed him to.

10. The plaintiff and WHITE went inside and entered the processing room where WHITE set his things on a desk. The plaintiff then said to WHITE " you know when we came to that red light you did not stop, and I did not know what to do." WHITE became mad and approached the plaintiff and stood very close. Approximately 2 inches away. WHITE raised his voice and practically screamed " not only did I stop, I used my turn signal and you didn't and for mouthing off to me, I'm going to give you a ticket for that too". As WHITE said this, the plaintiff started backing away and there was a bench behind the plaintiff which he sat down on. As the plaintiff was sitting down he blurted softly out Perfect Fucking Asshole. WHITE came over to the plaintiff again standing real close and stated "what did you say" . The plaintiff repeated "Perfect Fucking Asshole" a little louder.

> Factual allegation -- unlawful arrest
> Factual allegation -- improper search and seizure
> Factual allegation -- violation of right to free speech

11. WHITE told the plaintiff " to stand up, take off your hat, your belt, and your shoes, your under arrest.

12. The plaintiff stood up, barely having enough room to do so, and took off his hat. He did not have a belt on and he sat down and took his shoes off and started crying. While doing this the plaintiff asked WHITE "what am I being arrested for , you know I haven't broken any laws and I'm going to sue you." WHITE did not respond and soon left the room.

13. A couple of minutes later WHITE came back and asked the plaintiff to empty his pockets on the desk, which the plaintiff did. WHITE then asked the plaintiff to follow him . He took the plaintiff to the fingerprint table. As he was finished fingerprinting the plaintiff TYLER entered the room and the plaintiff was told that TYLER was the Watch Commander while the plaintiff again sat on the bench.. TYLER sat down at the desk, turned his chair around, and WHITE sat down kiddy corner next to TYLER, both facing the plaintiff.

Factual allegation -- violation of right to free speech
Factual allegation -- intimidation

14. TYLER told the plaintiff that "We really do not want to arrest you, why don't you apologize to him and we won't arrest you and we won't tow your car. The plaintiff said to TYLER, " What are you arresting me for, I haven't broken any laws." WHITE was looking at TYLER and said " You heard him say he was going to kick my ass, didn't you" and he rolled his eyes and looked at the plaintiff, to which TYLER did not respond.

15. TYLER then said "why did you bust his balls , we are allowed to break traffic laws. The plaintiff responded " not unless you are in pursuit or responding to something". TYLER then said "why don't you just apologize", and the plaintiff responded "I am not going to apologize I haven't done anything illegal". For what seemed like twenty minutes, TYLER kept asking the plaintiff to apologize and the plaintiff kept refusing. The plaintiff did not really believe that they would go through with this arrest but TYLER kept up insisting that the plaintiff apologize. TYLER'S arguments were that the plaintiff did not need this headache, they would tow the plaintiff's car,  the plaintiff could still make it to work, and Police are allowed to break traffic laws. Finally TYLER raised his voice and said " Apologize' and the plaintiff responded "not only is he a Perfect Fucking Asshole, You are too, and he is a Pussy. TYLER and WHITE stood up and TYLER said to WHITE "hook him up" as they were both walking out of the room. WHITE then handcuffed the plaintiff to the bench, and they both left the room.

16. A short time later TYLER came back into the room alone and sat down across from the plaintiff who was  still sitting handcuffed to the bench in tears. The plaintiff was still crying and TYLER made fun of him saying, "why are you crying, everything is going to be all right."

Factual allegation -- improper search and seizure
17. WHITE then came back into the room and he had the plaintiff's visa card in his hands. The plaintiff knowing that he had put his visa card under the visor  said, "yeah and you illegally searched my vehicle too".

18. WHITE sat down at the desk across from the TYLER and started to fill out the plaintiff's  bond papers.  WHITE reached over and grabbed the plaintiff's money and started to count it. The plaintiff had a little over a hundred dollars. WHITE then said to TYLER "I'm filling out two bonds, one for the traffic and one for the arrest." TYLER then said "no, you have to use one bond." WHITE looked at TYLER quizzically and TYLER leaned over the desk and whispered something to WHITE. When WHITE was finished they left the room.

19. A short time later both TYLER and WHITE came back into the room. WHITE came over to the plaintiff and released the handcuffs. As the plaintiff was attempting to stand up WHITE moved closer crowding the plaintiff. TYLER motioned the plaintiff over to the desk and asked him to sign the bond papers, which he  did and  put his belongings back into his pocket.

Factual allegation -- improper search and seizure
20. WHITE then moved closer crowding the plaintiff, WHITE told the plaintiff that his car had been towed and handed the plaintiff  two complaints.

21. The plaintiff had to back away again to read the complaints. One for Assault, in which WHITE claims that the plaintiff told WHITE that he would kick WHITES ass, and one for Battery in which WHITE claims that the plaintiff butted his chest against WHITES chest. WHITE then opened the door and told the plaintiff that he could leave. As the plaintiff

went through the door, WHITE again moved closer crowding the plaintiff. The plaintiff went around the building to the front to inquire about his car. The Communications Officer said the plaintiff would have to have his registration or proof of ownership to get his car. The plaintiff then walked to the towing place, about two miles, and retrieved the bill of sale for his car and proof of insurance. The plaintiff walked back to the Police Station and was given a tow release. The plaintiff retrieved his car and then went to work.

Occurrence Allegation 2
22. As a direct and proximate result of the intentional and malicious acts described aforesaid, the plaintiff has had to take off work, to defend himself against these false and malicious charges.

Factual allegation -- illegal detention
Factual allegation -- malicious prosecution STATE CLAIM
23. The plaintiff has had to take off work numerous times under threat of punishment for failing to appear. Each court date is a separate illegal detention. Plaintiff was forced to incur substantial obligations for attorney's fees, court reporter's fees, and other expenses against the unfounded and unwarranted prosecution by the defendants, which have been a serious burden to him. Plaintiff was improperly subjected to judicial proceedings for which there was no probable cause. These judicial proceedings were instituted and continued maliciously, and such proceedings were terminated in plaintiff's favor in a manner indicative of innocence.

Factual allegation -- malicious prosecution FEDERAL CLAIM
Occurrence Allegation 3
24. As a direct and proximate result of the intentional and malicious acts described aforesaid, the plaintiff spent 2 days in Cook County Jail on 1/7/99 and 1/8/99.

25. On 1/6/99 Plaintiff, through an Act of God, ( 2 ft., of snow on 1/2/99 and 1/3/99, car problems on the morning of 1/6/99, another 3 inches of snow on the morning of 1/6/99, and the difficulties of renting a car under such adverse weather conditions.) was late for court and a warrant was issued for his arrest.

26. At approximately 1:30 P.M., on 1/6/99 the Plaintiff arrived for court and was told by the clerk that regularly sits in Judge Zelezinski's court room that the Judge had gone home for the day and that a warrant was issued for the Plaintiffs arrest.

27. The Plaintiff made copies of his car rental agreement, time stamped by the Clerk of the Sixth Judicial Circuit and tendered one copy to said clerk for the case file.

28. On 1/7/99, the Plaintiff surrendered to the Clerk of the Sixth Judicial Circuit of Cook County at 9:00 A.M.
The Plaintiff appeared before the Judge, who issued a $10,000 bond, ($1000 cash).

Factual allegation -- false imprisonment
Factual allegation -- physical abuse
Factual allegation -- illegal detention
29. The plaintiff did not have that amount of cash on him and kept requesting a phone call to arrange bail. The Plaintiff was transferred to Cook County Jail. While on this bus, someone behind the Plaintiff was making sexual references to the Plaintiff about having this WHITE boy when we get to Cook. The Plaintiff choose to ignore this person and just sat there and cried. This person continued to berate the Plaintiff in a sexual manner and the Plaintiff continued to ignore him and was still crying. The Plaintiff was struck hard on the back right side of

his head by an unknown person. This person making sexual references continued to berate the Plaintiff.

### Factual allegation -- physical abuse

30. The bus arrived at Cook County Jail. The Plaintiff along with the other prisoners were asked to form one line with the person that you were handcuffed to next to you. The prisoners were escorted to a door and told to wait momentarily. The Plaintiff was again struck hard on the back right side of his head, by an unknown person.

31. The prisoners were escorted to the processing area of the jail. where the handcuffs were taken off and they were placed in a pen where there were pay phones which allow collect phone calls. The Plaintiff was finally allowed to make a phone call, somewhere around 10 and a half hours after he was arrested.

32. The Plaintiff then went through processing. The person who the Plaintiff called was attempting to bail the Plaintiff out of jail. The processing continued, at one point the Plaintiff had a needle stuck 1 inch inside his penis.

33. The person whom the Plaintiff had called , was attempting to get bail information from CCCD, and was continually informed that CCCD didn't know what the bail was and would not confirm if they had the Plaintiff.

34. The processing continued , at another point the Plaintiff was asked to strip, bend over and pull apart the cheeks of his rear so that someone could look up his anus.

35. The person whom the Plaintiff had called, was continuing to attempt to get information from CCCD, and was continually informed that CCCD didn't know what the bail was and would not confirm if they had the Plaintiff.

36. The Plaintiff endured around 5 hours of processing still crying.

37. The Plaintiff was given a bed roll.

38. The Plaintiff was placed in a cell where he had to sleep on the floor. The Plaintiff was still crying and continued to all night.

### Factual allegation -- physical abuse

39. While attempting to sleep the Plaintiff coughed. A cellmate of the Plaintiff jumped out of his bed and hit the Plaintiff on the back right side of his head, hard, and informed the Plaintiff to cover his mouth while coughing. The Plaintiff was still crying.

40. The Plaintiff eventually went to breakfast with the rest of the prisoners in his cell block, where there is pay phones which allow collect phone calls. The Plaintiff again called the person whom was trying to bail the Plaintiff out a jail and was informed that CCCD would not admit that they had the Plaintiff, however they had another Michael J, Corbett who was incarcerated for Domestic Battery and the bail was 1000 cash.

41. The Plaintiff continued to cry. The Plaintiff was eventually released on bail on 1/8/99, approximately 36 hours after he was arrested.

## Allegations as to Denial of Civil Rights

42. Each of the defendants, WHITE and TYLER, separately and in concert, agreement and conspiracy with each other, acted outside the scope of his

jurisdiction and without authorization of law and each of the defendants, separately and in concert, agreement and conspiracy with each other, acted willfully, knowingly, and purposefully with the specific intent to deprive plaintiff of his right to free speech; freedom from illegal seizure of his person, papers, and effects; freedom from unlawful arrest; freedom from illegal detention; freedom from illegal imprisonment; freedom from physical abuse; freedom from intimidation; a fair trial; and pursuit of happiness. All of these rights are secured to plaintiff by the provisions of the First Amendment and the due process clause of the Fifth and Fourteenth Amendments to the Constitution of the United States, and by Title 42 United States Code Section 1983; and by Title 18 United States Code § 245 (1968).

Allegations as to Damages

43. The acts of Defendants, WHITE and TYLER, described above in Occurrence Allegation 1 of this Complaint were done willfully, maliciously, outrageously, deliberately, and purposely with the intention to inflict emotional distress upon Plaintiff and these acts did in fact result in severe and extreme emotional distress.

44. The acts of Defendants, WHITE and TYLER, described above in Occurrence Allegation 2 of this Complaint were done willfully, maliciously, outrageously, deliberately, and purposely with the intention to cause Plaintiff to lose large sums of money and these acts did in fact result in loss of large sums of money.

45. The acts of Defendant described above in Occurrence Allegation 3 of this Complaint were done willfully, maliciously, outrageously, deliberately, and purposely with the intention to inflict emotional distress upon Plaintiff and/or were done in reckless disregard of the probability of causing Plaintiff emotional distress and humiliation, and these acts did in fact result in severe and extreme emotional distress and humiliation.

WHEREFORE plaintiff demands judgment against the defendants, WHITE and TYLER, and each of them, jointly and severally, in the amount of twenty five thousand dollars ($25,000) and he further prays for punitive damages against the defendants, WHITE and TYLER and each of them, jointly and severally, in the amount of twenty five thousand dollars ($25,000) for each civil rights violation.

*[signature: Michael J. Corbett]*

Michael J. Corbett
1642 Timberlane Dr.
Montgomery, IL 60538
630-898-6148
708-715-7826 cell