IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MICHAEL J. CORBETT

       Plaintiff

v.

TERRANCE WHITE, et el

**FILED**

JUL 2 8 2003

JUDGE JOAN B. GOTTSCHALL
United States District Court

)
)
)
)
)
)
)

Hon. Judge Gottschall

00cv4661

**DOCKETED**

AUG – 5 2003

Notice of Filing

TO Russell W. Hartigan, Patrick H. Oconner, 222 N. Laselle Street, Suit 2150, Chicago, IL 60601

**The plaintiff's reply to the defendants response to the plaintiff's motions in *limine***

The undersigned, being first duly sworn on oath deposes and states that he served the above and foregoing pleading on the attorneys for each party to whom it is directed, in a properly addressed postage prepaid envelope, by depositing same in the U.S. mail located on Ogden Ave, Lisle, IL 60532, on this 29th day of June, 2003

AFFIDAVIT

I _____, under penalty of perjury,

state that the above mentioned facts contained in this affidavit are

true and correct, are within my personnel knowledge, and if called

upon to testify in court to the following, I would do so.

Michael J. Corbett
P.O. Box 3756
Lisle, IL 60532
630-667-6317

MICHAEL J. CORBETT          )
                           )     00cv4661
          Plaintiff        )
                           )   Hon. Judge Gottschall
v.                         )
                           )   Magistrate Judge Shenkier
TERRANCE WHITE, et el      )
          Defendants       )   **DOCKETED**

                               AUG - 5 2003

### PLAINTIFF'S REPLY TO
### DEFENDANTS RESPONSE TO
### PLAINTIFFS MOTION IN LIMINE

Plaintiff has filed his motions In Limine in one document In three parts labeled as
follows:

I) Prior Criminal Acts;

II) Prior Lawsuits;

III) Prior Inconsistent Statements.

They will be responded to as follows:

# FILED

JUL 2 8 2003

JUDGE JOAN B. GOTTSCHALL
United States District Court

### I) PRIOR CRIMINAL ACTS

In this section, plaintiff wants an order prohibiting the defendants from introducing

evidence that  plaintiff committed other crimes of battery against police officers.


Although the plaintiff does not Indicate under what provision he is proceeding. the

defendants presume that plaintiff Is attempting to prohibit evidence of the nature

described in F.R.E. 404. 404(a) declares a general exclusionary rule the evidence of a

person's character or a trait of character is not admissible for to purpose of proving

action in conformity therewith on a particular occasion. Rule 404(b) furthers the general

prohibition against the use of character evidence by barring  the admission  of evidence

1

83

of other crimes, wrongs or acts to, prove the character of the person in order to show action in conformity therewith.

Plaintiff is partially correct

While it is true that defendants want to introduce testimony of some of MR. CORBETT's other prior acts, they are not doing so to prove MR. CORBETT's character. disposition or propensity to act in conformity therewith. F.R.E. 404(b) provides that evidence of other acts may be admissible if sought to be used *not to show* character or propensity, *but to show* a fact that is specifically relevant to the case at hand. Rule 404(b) reference to "may be admissible does not mean that the evidence is automatically inadmissible under 404(b) exclusionary rule. In the case at hand, plaintiff has denied threatening to kick your ass with fists clenched to OFFICER WHITE which formed the basis of OFFICER WHITE's criminal complaint against CORBETT for assault. The plaintiff also claims that he did not bump OFFICER WHITE with his chest, which formed the basis of OFFICER WHITE's battery charge against him. **The testimony of CORBETT's encounter with the Elk Grove Police Officers which resulted in MR. CORBETT poking a police officer with his finger and verbally threatening the officer** would tend to show plaintiffs bias against police officers. Incidentally. plaintiff stated at his deposition that officers "that don't follow the law, I have an innate dislike for them... "(p. 86 of Corbett deposition.) The defendants feel it is fair for defendants to assert that MR. CORBETT, to the extent he feels is right, expresses his dislike for police in sometimes inappropriate ways.. MR. CORBETT also claims that he was humiliated by having to go

through the arrest procedures at Markham which he has done before and, therefore, that goes to the issue of compensatory and punitive damages for which plaintiff prays.

**There is no testimony by Corbett that he verbally threatened the Elk Grove Police, SHAME SHAME PAT OCCONER.**

While it is true that defendants want to introduce testimony of some of MR. CORBETT's other prior acts, they are not doing so to prove MR. CORBETT's character. disposition or propensity to act In conformity therewith. F.R.E. 404(b) provides that evidence of other acts may be admissible if sought to be used *not to show* character or propensity, *but to show* a fact that is specifically relevant to the case at hand. Rule 404(b) reference to "may be admissible does not mean that the evidence is automatically Inadmissible under 404(b) exclusionary rule. In the case at hand, plaintiff has denied threatening to kick your ass with fists clenched to OFFICER WHITE which formed the basis of OFFICER WHITE's criminal complaint against CORBETT for assault. The plaintiff also claims that he did not bump OFFICER WHITE with his chest, which formed the basis of OFFICER WHITE's battery charge against him. The testimony of CORBETT's encounter with the Elk Grove Police Officers which resulted in MR. CORBETT poking a police officer with his finger and verbally threatening the officer would tend to show plaintiffs bias against police officers. **Incidentally. plaintiff stated at his deposition that officers "that don't follow the law, I have an innate dislike for them... "(p. 86 of Corbett deposition.)** The defendants feel it is fair for defendants to assert that MR. CORBETT, to the extent he feels is right, expresses his dislike for police in sometimes

inappropriate ways.. MR. CORBETT also claims that he was humiliated by having to go through the arrest procedures at Markham which he has done before and, therefore, that goes to the issue of compensatory and punitive damages for which plaintiff prays.

**The plaintiff does not deny he has an innate (dislike for police officers, that don't follow the law.)  The plaintiff denies that he is biased against Police officers. The plaintiff does deny that this tends to prove the plaintiff has a bias against police officers.  This court has already witnessed on 7/23/03 that the plaintiff has an innate dislike for lawyers that don't follow the law, and the plaintiff was emotionally distressed by the actions of that lawyer.  The plaintiff, however did not commit assault and battery against the lawyer who did not follow the law, and is not biased against lawyers.**

While it is true that defendants want to introduce testimony of some of MR. CORBETT's other prior acts, they are not doing so to prove MR. CORBETT's character. disposition or propensity to act In conformity therewith. F.R.E. 404(b) provides that evidence of other acts may be admissible if sought to be used *not to show* character or propensity, *but to show* a fact that is specifically relevant to the case at hand. Rule 404(b) reference to "may be admissible does not mean that the evidence is automatically Inadmissible under 404(b) exclusionary rule. In the case at hand, plaintiff has denied threatening to kick your ass with fists clenched to OFFICER WHITE which formed the basis of OFFICER WHITE's criminal complaint against CORBETT for assault. The plaintiff also claims that he did not bump OFFICER WHITE with his chest, which formed the basis of

OFFICER WHITE's battery charge against him. The testimony of CORBETT's encounter with the Elk Grove Police Officers which resulted in MR. CORBETT poking a police officer with his finger and verbally threatening the officer would tend to show plaintiffs bias against police officers. Incidentally. plaintiff stated at his deposition that officers "that don't follow the law, I have an innate dislike for them... "(p. 86 of Corbett deposition.) **The defendants feel it is fair for defendants to assert that MR. CORBETT, to the extent he feels is right, expresses his dislike for police in sometimes inappropriate ways**. MR. CORBETT also claims that he was humiliated by having to go through the arrest procedures at Markham which he has done before and, therefore, that goes to the issue of compensatory and punitive damages for which plaintiff prays.

**The defendants do not offer any proof that the plaintiff is biased against police officers, just mere conjecture and speculation. While a charge a battery was alleged in 94 by the Elk Grove police officers, the charge was never proven in a court of law. The defendants want to tell the jury that the plaintiff is SOMETIMES biased against police officers**

While it is true that defendants want to introduce testimony of some of MR. CORBETT's other prior acts, they are not doing so to prove MR. CORBETT's character. disposition or propensity to act In conformity therewith. F.R.E. 404(b) provides that evidence of other acts may be admissible if sought to be used *not to show* character or propensity, *but to show* a fact that is specifically relevant to the case at hand. Rule 404(b) reference

5

to "may be admissible does not mean that the evidence is automatically Inadmissible under 404(b) exclusionary rule. In the case at hand, plaintiff has denied threatening to kick your ass with fists clenched to OFFICER WHITE which formed the basis of OFFICER WHITE's criminal complaint against CORBETT for assault. The plaintiff also claims that he did not bump OFFICER WHITE with his chest, which formed the basis of OFFICER WHITE's battery charge against him. The testimony of CORBETT's encounter with the Elk Grove Police Officers which resulted in MR. CORBETT poking a police officer with his finger  and verbally threatening the officer would tend to show plaintiffs bias against police officers. Incidentally. plaintiff stated at his deposition that officers  "that don't follow the law, I have an innate dislike for them... "(p. 86 of Corbett deposition.) The defendants feel it is fair for defendants to assert that MR. CORBETT, to the extent he feels is right, expresses his dislike for police in sometimes inappropriate ways. **MR. CORBETT also claims that he was humiliated by having to go through the arrest procedures at Markham which he has done before and, therefore, that goes to the issue of compensatory and punitive damages for which plaintiff prays.**

**This allegation saddens the plaintiff greatly.  While the plaintiff has no bias against lawyers, a lawyer who does not follow the law is bound by the rules of professional conduct.  Pat O'connor has had in his possession since approximately 8/10/02 a settlement demand with documentation.  See attached proof of service by mail and settlement demand with documentation.  This court did not receive documentation along with the settlement demand.  This**

documentation, shows that the only thing the plaintiff is alleging as humiliation is his experience at CCCD. The plaintiff admits he has an innate dislike for lawyers who don't follow the law, and Judge Gottschall is a lawyer and is duty bound to turn Pat O'connor into the ARDC for violations of Rules of Professional Conduct.

Judge Gotschall had no problem interpreting from the complaint that the Plaintiff was humiliated by going through processing at CCCD. See her memorandum opinion and order.

Finally, this evidence tends to show that plaintiff's motive for becoming upset at the police officers because of his dealings with the officers in Elk Grove police officers on prior occasions. See generally, Hernandez v. Cepeda 860 F.2d 260 (7th Cir. 1988). In Hernandez an excessive force arrest case in which the defendant asserted that the plaintiff was resisting arrest, the circuit court held that it was not error for the trial Court to allow defendant to introduce evidence that to plaintiff was arrested for rape and aggravated kidnapping. The evidence was probative of the plaintiff's motive to resist for these serious charges, which in turn was relevant because it would tend to make the defendant's testimony that Hernandez did resist arrest more probable than it would be without the evidence.

The plaintiff fails to see the relevance of Hernandez v. Cepeda. In Hernadez, the plaintiff Hernandez was arrested by the same police officers whom he was suing

and the trial court held that the charges for which Hernandez was arrested for would tend to make the defendant's testimony that Hernandez did resist arrest more probable than it would be without the evidence. In the Sub Judice, the defendants are ? claiming that an arrest by the Elk Grove Police in 1994 tends to make the defendant's testimony that Corbett did assault and Batterize Defendant WHITE more probable than it would be without the evidence. This evidence is clearly more prejudicial than probative, and the plaintiff seeks protection under 403.

Plaintiff has, which the defendants will attempt to show, and which the defendants believe the evidence will support a bias against police officers which is at least admissible for bias impeachment See Heath v. Cast 813 F.2d 254 (9th Cir.), cert denied, 484 U.S. 849(1987).

The plaintiff fails to see the relevance of the HEATH court. In Heath, the plaintiff admitted, (stipulated to) a previous bias against the police he was suing . The trial court held the jury was entitled to know more about the bias than just the stipulation. Normally Bias is limited to criminal proceedings.

These prior acts of the plaintiff, particularly with respect to the Elk Grove Police Department incident are probative on the issues of **damages**, bias, plaintiffs motive for becoming enraged and threatening OFFICER WHITE, and to show plaintiffs intent to

accost police officer, and, therefore. rebut plaintiff's charge of fabrication of charges by WHITE.

**This allegation saddens the plaintiff greatly. While the plaintiff has no bias against lawyers, a lawyer who does not follow the law is bound by the rules of professional conduct. Pat O'connor has had in his possession since approximately 8/10/02 a settlement demand with documentation. See attached proof of service by mail and settlement demand with documentation. This court did not receive documentation along with the settlement demand. This documentation, shows that the only thing the plaintiff is alleging as humiliation is his experience at CCCD. The plaintiff admits he has an innate dislike for lawyers who don't follow the law, and Judge Gottschall is a lawyer and is duty bound to turn Pat O'connor into the ARDC for violations of Rules of Professional Conduct.**

These prior acts of the plaintiff, particularly with respect to the Elk Grove Police Department incident are probative on the issues of damages, **bias**, plaintiffs motive for becoming enraged and threatening OFFICER WHITE, and to show plaintiffs intent to accost police officer, and, therefore. rebut plaintiff's charge of fabrication of charges by WHITE.

**How the events in Elk Grove shows bias against police is beyond my understanding**

These prior acts of the plaintiff, particularly with respect to the Elk Grove Police Department incident are probative on the issues of damages, bias, **plaintiffs motive for becoming enraged and threatening OFFICER WHITE**, and to show plaintiffs intent to accost police officer, and, therefore. rebut plaintiff's charge of fabrication of charges by WHITE.

**How the Elk Grove incident, shows motive to become enraged and threaten a police officer 4 years later is relevant, is beyond the scope of this inquiry. The Defendants offer no expert witnesses to support this allegation.**

These prior acts of the plaintiff, particularly with respect to the Elk Grove Police Department incident are probative on the issues of damages, bias, plaintiffs motive for becoming enraged and threatening OFFICER WHITE, **and to show plaintiffs intent to accost police officer**, and, therefore. rebut plaintiff's charge of fabrication of charges by WHITE.

**How the Elk Grove incident shows intent by plaintiff to accost police officer 4 years later is beyond the scope of this inquiry. The Defendants offer no expert witnesses to support this allegation.**

The elk grove incident, occurring after a banquet for the teams that participated in a pool league. The plaintiff had been drinking all day, had lost his keys, and became involved with a customer - management dispute over the lost keys. The plaintiff was

on the phone trying to talk to the owner of the pool hall after the police had been called. The plaintiff was poked in the chest by a police officer who was trying to get the plaintiffs attention and the plaintiff poked him back. The plaintiff was arrested for poking him in the chest, for which the plaintiff did resist arrest. The plaintiff pled guilty for resisting arrest but denies committing any battery.

The plaintiff seeks rule 403 protection.

## II) Prior Lawsuits;

Plaintiff Is correct that if evidence of other lawsuits is simply to show plaintiffs litigiousness or that he is a chronic litigant, that evidence will normally be excluded under Rule 403 because the probative value Is outweighed by its prejudicial effect. Without a substantial link to bias, the evidence of plaintiff's litigiousness Is improper character evidence.

**THERE IS NOW some reference In plaintiffs pleadings that he Is not claiming emotional distress because of illegal searches of pat-downs.** However, the plaintiff's Amended Complaint, which constitutes judicial admissions, specifically contained that allegation In the damage section. While, the defendants believe that the course of the trial will be controlled by the allegations contained in the Complaint should the plaintiff wish to withdraw certain elements of damages he has not done so effectively by the jury instructions he submitted.

The plaintiff now see the reasons for Pat O'connors violations of rule 8.4 of the Rules of Professional Conduct. Apparently he wants to use the inartfuly pled complaint to his advantage. The Plaintiff seeks protection under Rule 403. The plaintiff fails to see how the Jury instructions disagree with the damages sought by the plaintiff.

In any event to the extent to which the plaintiff does open the door the other suits are probative on the Issue of causation and will support an inference that MR. CORBETTs emotional condition was caused by either other actions for which he has sought recompense or is unrelated In whole or In part to the at-issue litigation. In Hancock v. Dobson 958 F.2d 1367 (6th Or. 1992), the circuit court held that the district court did not error In allowing defense counsel to cross-examine the plaintiff about her state court suit to recover for Injuries her husband suffered In an automobile accident because it was probative on the Issue of causation. The court ruled that absent unauthorized conduct on the plaintiff's attorney, there is nothing unfair about having to explain one's past lawsuits.

The plaintiff concedes that SHEAHAN by not giving the plaintiff a phone call should be liable also. But to what extent is a question for the jury to decide. But if not for the malicious acts of WHITE and TYLER, Sheahan would never have to give the plaintiff a phone call. Both WHITE and TYLER knows that jail was a real possibility for the alleged assault and battery against a police officer, and was foreseeable by them.

To the extent to which plaintiff Is going to be seek damages for mental anguish, anxiety, depression and humiliation, since the plaintiff has placed his mental condition at issue with a claim for such damages, that evidence should be admitted. See Hancock y, Hobbs 967 F.2d 462 (11th Cir. 1992). The other suits, to the extent they claim similar Injuries, are probative on the Issue of causation.

The BIGGS lawsuit is totally irrelevant to this lawsuit. Juries are allowed to consider the emotional damages of the plaintiff for the malicious acts by WHITE and TYLER.

See for example Raysor v. Port Authority of New York and New Jersey et al. 768 F2d 34, 40. Raysors litigiousness may have some slight probative value, but that value is outweighed by the substantial danger of jury bias against the chronic litigant. See McCormick on evidence § 196 at 578-80 (3d ed. 1984)

III) PRIOR INCONSISTANT STATEMENTS

TYLER has made under oath two diametrically opposed statements one of which cannot be true. Under the rules of evidence, acts involving the truthfulness of a party are admissible

Michael J. Corbett
Plaintiff Propria Persona
P.O. Box 3756
Lisle, IL 60532
630 667 6317

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MICHAEL J. CORBETT    )
          ) 00cv4661
   Plaintiff    )
          ) Hon. Judge Gottschall
v.           )
          ) Magistrate Judge Shenkier
TERRANCE WHITE, et el   )
   Defendant    )

PROOF OF SERVICE BY MAIL

TO Russell W. Hartigan, Patrick H. Oconner, 134 N. Lasselle
Street, Suit 18000, Chicago, Il 60602


The undersigned certifies that 2 copys of the Plaintiffs Demand
for Settlement, 1copy with documentation for Hartigan and
Cuisner, and 1 copy without for the court was served on the above
named person(s) by depositing same in a mailbox at the Post
Office in Aurora with proper postage prepaid.

_____

Subscribed and Sworn to before me this _10_ day of _Agust_ 2002

_____
Notary Public

"OFFICIAL SEAL"
ROBERT R. SALLY
Notary Public, State of Illinois
My Commission Expires June 30, 2006

Michael J. Corbett
P.O. Box 6197
Aurora, IL 60598-6197
630-667-6317

MICHAEL J. CORBETT )
)      00cv4661
          Plaintiff )
)   Hon. Judge Gottschall
v. )
)   Magistrate Judge Shenkier
TERRANCE WHITE, et el )
          Defendants )

## SETTLEMENT DEMAND

NOW COMES the PLAINTIFF, MICHAEL J CORBETT, PRO SE, and DEMANDS $50,000 to settle this lawsuit.

## BACKGROUND

On 8/3/98 while traveling to work, the plaintiff was pulled over for a traffic violation. Ultimately he was falsely accused of assault and battery by Defendants White and Tyler. See amended complaint.

The plaintiff spent 27 months defending himself against these false and malicious charges. Ultimately he was acquitted.

The Plaintiff brings suit for a) due process violation and/or abuse of process, b) civil conspiracy, c) free speech violation d) illegal search of his vehicle, e) illegal seizure of his vehicle, f) malicious prosecution.

## EVIDENCE

The standard in a civil suit is a preponderance of the evidence, or in other words the trier of fact decides what most likely happened and the burden is on the plaintiff. The Plaintiff will easily meet this burden and more. The Plaintiff will prove beyond a reasonable doubt, that a) T. White committed perjury and b) T. Tyler suborned perjury.

## T. WHITE

The following is public record.

Defendant White on 8/3/98 on oath claimed that the Plaintiff was speeding, did not have his drivers license on him, and his plates were not properly registered, and that these traffic offenses occurred @ 5:37 A.M.

The Leads Computer printout found in the official court file, kept by the Clerk of the Court of Cook County, which defense council has agreed to stipulate to, states that these traffic offenses occurred at 5:16 A. M.

Defendant White testified in court that after stopping the Plaintiff, he escorted the plaintiff to the police station where he started writing tickets. After finishing a ticket, he claims that the Plaintiff assaulted and battered him.

There is a police report signed by Defendant White for an arrest for an alleged assault occurring at 5:28 A.M.

Defendant White on 8/3/98, on oath. in the battery complaint, stated that the battery occurred during the processing stage of the arrest.

There is a police report, signed by Defendant White, stating that the plaintiff was fingerprinted and photographed at 5:40 and 5:45 A.M. This report also states that the Plaintiff was arrested for a battery at 5:55 A.M.

Defendant White testified in court on 10/17/00, that the assault and battery occurred together, shortly upon arrival at the police station.

## CONCLUSION

Defendant White cannot resolve the conflicts in the oath he took when he signed the complaint and the oath he took when he testified in court.

## T. TYLER

Defendant Tyler, did not sign the complaint, nor did he testify in court, however it can easily be proved that he suborned the perjury of Defendant White.

Defendant Tyler testified after reading Defendant White's incident report that Defendant White pretty much told him what was written in the report.

The minimum that would have to be communicated to Defendant Tyler by Defendant White, the crime(s) and time(s).

Defendant White in the incident report, wrote *"a short time later Corbett stated to R/O that "I'll kick your ass!" At this point R/O informed Corbett that he was under arrest for assault, at this point Corbett again approached R/O in a threatening manner and struck R/O in the chest with his chest.*

There can be no mistake about the above statement, Defendant White wrote the assault and battery occurred simultaneously.

Defendant Tyler, despite his claim that Defendant White told him the assault and battery occurred simultaneously, documented an alleged assault at 5:27 A. M. and an alleged battery at 5:55 A.M.

Defendant Tyler, while struggling to resolve the conflicts with the documentation he made of the arrest, and his testimony in the interrogatories and deposition, claimed that he must have confused the 5:27 A. M. with the 5: 57A. M. (when Defendant White reported the "battery), completely ignoring the fact that he documented fingerprinting and photographing occurring before the arrest for battery.

Defendant Tyler, knowingly turned a blind eye to the illegal and malicious conduct of Defendant White.

By turning a blind eye, Defendant Tyler is as guilty as Defendant White for the crimes and civil violations of Defendant White and is just as culpable.

While turning a blind eye, is a passive event, Defendant Tyler committed active events, which make him culpable also.

a) His documentation of the false and malicious actions of Defendant White. b) his denial of his documentation of the battery charge. c) his addition to the false and malicious charges, that the Plaintiff had been drinking to make it appear more likely that the Plaintiff had committed assault and battery.

## CONCLUSION

Defendant Tyler cannot resolve the conflict with the testimony in the interrogatory and deposition, with his documentation of the false and malicious charges.

## DUE PROCESS VIOLATION

The charges against the plaintiff were false, perjured and corrupt. Defendants White and Tyler would not risk civil and criminal liability if the plaintiff had committed a crime. Without the perjured testimony of White, it would be very hard to win a suit against the Defendants.

The due process violation, or Right to a Fair Trial can be proven, from the perjured testimony of Defendant White.

## CIVIL CONSPIRACY

The civil conspiracy can be proven also. The perjured testimony of Defendant White, along with the suborning of perjury by Defendant Tyler, is proof of a civil conspiracy to violate the Plaintiff's rights to a fair trial, along with the Plaintiff's right to be free from malicious prosecution.

Further evidence that the Defendants acted separately and in concert. are their answers to question # 18 of the supplemental interrogatory. This question, was designed to get Defendant Tyler to admit that he documented 2 different arrests.

Defendant Tyler denied filling out any of boxes on this offense incident report, and Defendant White, by answering only "yes" to the question "which boxes did you fill out, apparently was testifying that he filled out all the boxes of the offense incident report.

These answers by the Defendants are perjured, evasive and incomplete.

After requests to admit that Defendant Tyler signed this offense incident report, the Court ordered the Defendants to amend their answers

## FREE SPEECH VIOLATION

A jury must decide what most likely happened in the police station that morning. The only conclusion they can come to is the plaintiff's version. They cannot accept the perjured version of the Defendants.

## ILLEGAL SEARCH OF VEHICLE

It is a matter of public record that the vehicle was searched by the Defendants. The only question left is "was the search legal". While Police officers can do an inventory search when they legally impound the vehicle, the legality of the search turns on whether the vehicle was legally impounded.

## ILLEGAL SEIZURE OF VEHICLE

The following is public record. Defendant White testified on 10/17/00 that " *I let him park in the police parking lot. Because we were just going to be a few minutes. I was just going to write him an "I" bond. And he would be right back out.*

The impounding of the vehicle was not done sufficiently contemporaneous to the issuance of the traffic tickets.

The decision to impound the vehicle, had to have been made when the false and malicious charges of assault and battery were made. But the legality of the search and seizure does not turn on the alleged assault and battery, it turns on the fact that the plaintiff was already in the stationhouse before the alleged assault and battery. Therefore the only conclusion is that this was not sufficiently contemporaneous to the alleged assault and battery, thus the search and seizure were illegal and violated the Plaintiff's rights.

Additionally, the inventory of the vehicle, the impound record, and the release by the Markham Police of the impounded vehicle, would regularly be kept in the file of the arrest of the plaintiff. Furthermore, these 3 records could not be destroyed until ( the plaintiff is informed and believes, a specified time provided by statute,) the criminal and civil charges are over with. The Plaintiff requested this complete file, during discovery, however the 3 records were not tendered.

It is well settled that the intentional spoilation of evidence, would create a presumption that the evidence, if produced, would be adverse to the party required to produce it.

## MALICIOUS PROSECUTION

Defendants White and Tyler commenced a false criminal proceeding, without probable cause. The primary purpose of which was to intentionally cause emotional distress, the proceedings were terminated in the Plaintiff's favor, the Plaintiff had substantial damages, and this case screams for punitive damages.

## DAMAGES

a) Lost Work Time 26.95-29.15. (part or all of 34 days)
b) Traveling to and from court @ statutory rate of mileage.
c) Lost annuity contributions
d) Attorney fees
e) towed vehicle
f) illegal search of vehicle
g) forfeited bond
h) transcripts
I) rental car
j) Lost pension credit for 1999 1/4 point.
k) Lost opportunity for promotion
l) Lost opportunity to add job descriptions to resume
m) suicidal ideation
n) humiliation
o) shame
p) crying manifestations
q) depression
r) worry
s) anger
t) anxiety
u) frustration
v) desperation
w) disappointment
x) nervousness

y) irritability
z) loss of socialization
aa) loss of enjoyment of hobbies
ab) loss of pursuit of happiness
ac) loss of ability to pursue religious activities
ad) paranoia
ae) loss of enjoyment of familial relationships

Respectfully submitted

By: _Michael J. Corbett_
Michael J. Corbett Pro Se

Michael J. Corbett
P.O. Box 6197
Aurora, IL 60538
630-667-6317

| Date | hours missed | Comp. | wages | total BxD | staying | rate of | milage | total GXH |
|---|---|---|---|---|---|---|---|---|
| 8/3/1998 | 5 | Duguid | $26.95 | 134.75 | Matteson | 0.34 | 11 | 3.74 |
| 9/9/1998 | 8 | Duguid | $26.95 | 215.6 | Matteson | 0.34 | 11 | 3.74 |
| 9/23/1998 | 8 | Duguid | $26.95 | 215.6 | Matteson | 0.34 | 11 | 3.74 |
| 10/15/1998 | 8 | Duguid | $26.95 | 215.6 | Matteson | 0.34 | 11 | 3.74 |
| 11/5/1998 | 8 | Duguid | $26.95 | 215.6 | Matteson | 0.34 | 11 | 3.74 |
| 12/11/1998 | 8 | Duguid | $26.95 | 215.6 | Portage In | 0.34 | 59.2 | 20.128 |
| 1/6/1999 | 8 | Duguid | $26.95 | 215.6 | Merrivile In | 0.34 | 60.8 | 20.672 |
| 1/7/1999 | 8 | Duguid | $26.95 | 215.6 | Merrivile In | 0.34 | 60.8 | 20.672 |
| 1/8/1999 | 8 | Duguid | $26.95 | 215.6 | Merrivile In | 0.34 | 60.8 | 20.672 |
| 1/11/1999 | 5 | Duguid | $26.95 | 134.75 | Merrivile In | 0.34 | 60.8 | 20.672 |
| 1/25/1999 | 8 | Duguid | $26.95 | 215.6 | Merrivile In | 0.34 | 60.8 | 20.672 |
| 2/23/1999 | 8 | Duguid | $26.95 | 215.6 | Merrivile In | 0.34 | 60.8 | 20.672 |
| 3/8/1999 | 8 | FCI | $26.95 | 215.6 | Montgome | 0.34 | 99 | 33.66 |
| 4/16/1999 | 8 | FCI | $26.95 | 215.6 | Montgome | 0.34 | 99 | 33.66 |
| 4/30/1999 | 3 | Duguid | $26.95 | 80.85 | Montgome | 0.34 | 99 | 33.66 |
| 5/21/1999 | 4 | Duguid | $26.95 | 107.8 | Montgome | 0.34 | 99 | 33.66 |
| 6/2/1999 | 8 | Duguid | $28.20 | 225.6 | Montgome | 0.34 | 99 | 33.66 |
| 6/9/1999 | 8 | Duguid | $28.20 | 225.6 | Montgome | 0.34 | 99 | 33.66 |
| 7/21/1999 | 4 | FCI | $28.20 | 112.8 | Montgome | 0.34 | 99 | 33.66 |
| 9/9/1999 | 8 | Northern | $28.20 | 225.6 | Montgome | 0.34 | 99 | 33.66 |
| 9/13/1999 | 8 | Northern | $28.20 | 225.6 | Montgome | 0.34 | 99 | 33.66 |
| 10/4/1999 | 8 | Northern | $28.20 | 225.6 | Aurora | 0.34 | 90.4 | 30.736 |
| 10/18/1999 | 8 | Northern | $28.20 | 225.6 | Aurora | 0.34 | 90.4 | 30.736 |
| 11/1/1999 | 8 | Northern | $28.20 | 225.6 | Aurora | 0.34 | 90.4 | 30.736 |
| 12/1/1999 | 8 | Northern | $28.20 | 225.6 | Aurora | 0.34 | 90.4 | 30.736 |
| 2/14/2000 | 8 | Markham | $28.20 | 225.6 | Aurora | 0.34 | 90.4 | 30.736 |
| 3/28/2000 | 8 | FCI | $28.20 | 225.6 | Aurora | 0.34 | 90.4 | 30.736 |
| 5/30/2000 | 8 | FCI | $28.20 | 225.6 | Aurora | 0.34 | 90.4 | 30.736 |
| 6/1/2000 | 8 | FCI | $29.15 | 233.2 | Aurora | 0.34 | 90.4 | 30.736 |
| 8/9/2000 | 8 | FCI | $29.15 | 233.2 | Aurora | 0.34 | 90.4 | 30.736 |
| 10/16/2000 | 8 | FCI | $29.15 | 233.2 | Aurora | 0.34 | 90.4 | 30.736 |
| 10/17/2000 | 8 | FCI | $29.15 | 233.2 | Aurora | 0.34 | 90.4 | 30.736 |
|  | 237 |  |  | 6572.55 |  |  |  | 803.896 |
|  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |
| $6,437.80 | 1 | Total lost wages excluding towed vehicle |  |  |  | RTFT |  |  |
| $803.90 | 2 | Total lost expenses travelling |  |  |  | RTFT |  |  |
| $36.00 | 3 | Lost annuity contribution from 7/00-10/17/00 |  |  |  | RTFT |  |  |
| $2,500.00 | 4 | Attorney fees |  |  |  | RTFT |  |  |
| $234.75 | 5 | towed vehicle + 5hours lost wages |  |  |  | ISOV |  |  |
| $1.00 | 6 | illegal search of vehicle |  |  |  | ISOV |  |  |
| $200.00 | 7 | Forfieted bond |  |  |  | RTFT |  |  |
| $150.00 | 8 | Transcripts |  |  |  | RTFT |  |  |
| $202.83 | 9 | Rental Car |  |  |  | RTFT |  |  |
| u@p | 10 | Lost 1/4 pension credit for 1999 |  |  |  | RTFT |  |  |
| PL or WTJD | 11 | Lost opportunity for promotion |  |  |  |  | MP |  |
| PL or WTJD | 12 | Lost opportunity to add job desritions to resume |  |  |  |  | MP |  |
| WTJD | 13 | Suicidal Ideation |  |  |  |  | MP |  |

| WTJD | 14 | Humiliation | | | | | MP |
|------|-----|-------------|---|---|---|---|-----|
| WTJD | 15 | Shame | | | | | MP |
| WTJD | 16 | Crying Manifestations | | | | | MP |
| WTJD | 17 | Depression | | | | | MP |
| WTJD | 18 | Worry | | | | | MP |
| WTJD | 19 | Anger | | | | | MP |
| WTJD | 20 | Anxiety | | | | | MP |
| WTJD | 21 | Frustration | | | | | MP |
| WTJD | 22 | Desperation | | | | | MP |
| WTJD | 23 | Dissapointment | | | | | MP |
| WTJD | 24 | Nervousness | | | | | MP |
| WTJD | 25 | Irritability | | | | | MP |
| WTJD | 26 | Loss of socialization | | | | | MP |
| WTJD | 27 | Loss of enjoyment of hobbies | | | | | MP |
| WTJD | 28 | Loss of pursuit of happiness | | | | | MP |
| WTJD | 29 | Loss of ability to pursue religious activities | | | | | MP |
| WTJD | 30 | Paranoia | | | | | MP |
| WTJD | 31 | loss of opportunity for overtime. | | | | | MP |
| $10,330.53 | | TOTAL ACTUAL MONETARY DAMAGES FROM RTFT | | | | | |
| $235.75 | | ILLEGAL SEARCH AND SEIZURE OF VEHICLE | | | | | |
| WTJD+$50 K Punitive | | RIGHT TO FAIR TRIAL | | | | | |
| WTJD+$50 K Punitive | | FREE SPEECH VIOLATION | | | | | |
| WTJD+$50 K Punitive | | CIVIL CONSPIRACY | | | | | |
| WTJD+$50 K Punitive | | ILLEGAL SEARCH AND SEIZURE | | | | | |
| WTJD+$50 K Punitive | | MALICIOUS PROSECUTION | | | | | |
| | | | | | | | |
| UNKNOWN | | WHATEVER THE JURY DECIDES FOR MALICIOUS PROSECUTION | | | | | |
| PL PRICELESS | | | | | | | |
| WTJD WHATEVER THE JURY DECIDES | | | | | | | |
| U@P–unknown @ present | | | | | | | |
| RTFT–RIGHT TO FAIR TRIAL | | | | | | | |
| MP MALICIOUS PROSECUTION | | | | | | | |
| | | | | | | | |
| .34 cents per mile may be incorrect | | | | | | | |
| Duguid – William A. Duguid | | | | | | | |
| FCI–    FCI INC. | | | | | | | |
| Northern – Northern III Const, Services | | | | | | | |
| Markham – Markham Division 9 | | | | | | | |
| 150 for transcripts is an approximation | | | | | | | |

## TO DOCUMENT THE LESS OBVIOUS CLAIMS FOR DAMAGES

### SUICIDAL IDEATION

After the false charges were filed, the plaintiff, who was on medication for depression and anxiety, while defending himself against these charges, went into a deeper depression, highlighted by a constant crying manifestation. He asked his doctor to increase his medication.

His doctor asked the Plaintiff if he was suicidal. The Plaintiff responded yes. The doctor asked if the plaintiff had developed a plan, to which the plaintiff responded yes. The doctor informed the Plaintiff the only treatment he could give the plaintiff was hospitalization. He also stated that if the plaintiff left, he would have to call the police.

### PARANOIA

The plaintiff left, and when he arrived home, there was an message on the answering machine, from a Cook County Sheriffs Deputy, asking the plaintiff to open the door, the sheriffs deputy only wanted to speak to the plaintiff. The Plaintiff packed his clothes and moved to Indiana.

### HUMILIATION, SHAME, RENTAL CAR, AND PARANOIA

On 1/2/99 and 1/3/99 we had about 2 feet of snow. On 1/6/99 a scheduled court date for the plaintiff, there was another 3 inches of snow. The plaintiff had car problems, rented a car, made it to court after the judge had gone home. The Plaintiff surrendered the next day and was given a new bond, and sent to Cook County Jail for processing. This caused a constant crying manifestation. At one stage during processing the plaintiff had a needle stuck inside his penis, and at another had to spread apart his legs, and pull the cheeks of his anus apart, so that someone could peer up it.

### LOST OPPORTUNITY FOR PROMOTION and LOST OPPORTUNITY FOR OVERTIME and LOST OPPORTUNITY TO ADD JOB DESCRIPTIONS TO RESUME

The plaintiff is a carpenter, and taking days off worked is greatly frowned upon. While defending against these false and malicious charges, the plaintiff had to take off approximately 33-34 days from work. This is akin to raising your hand if the employer is looking to lay off. A person who takes lots of days off will be laid off before a otherwise dependable person.

The employer wants dependable people to run their jobs, (foreman, which would include learning new skills such as material estimating, blueprint reading, communicating and coordinating project management with other trades, and communicating with the job superintendent and the owner. A person who takes lots of days off would not be considered for such a position.

The employer will assign the more difficult assignments to dependable people. Persons who take lots of days off would be assigned the more mundane and easily replaced job assignments.

Employers generally give their overtime to the most dependable employees.

### LOSS OF SOCIALIZATION

During the 27 months while defending against these false and malicious charges, the plaintiff has been unable to enjoy the company of his friends and became almost a virtual recluse. Except when obligated, and only sometimes when obligated, the plaintiff has avoided nearly all social invitations, and has initiated no social invitations.

## LOSS OF ENJOYMENT OF HOBBIES

Prior to the false and malicious charges, the Plaintiff was an accomplished pool player. He was the Current Illinois State 8 BALL Champion. He has won amateur tournaments numerous times over the previous twenty years. After the charges, the plaintiff could not concentrate, and therefore could not afford to compete at the level he craved.

## LOSS OF ABILITY TO PURSUE RELIGIOUS ACTIVITIES

In the several months just prior to the false and malicious charges, the plaintiff was attending church, and had just attended a meeting of an organization known as Promise Keepers. This nondenominational Christian organization was devoted to follow the word of God as given to us in the Bible.

On 8/2/98, the day before the false and malicious charges, the plaintiff paid his tithed, for the first time as directed by Christ. 10% of wages. The false and malicious charges has prevented the plaintiff from ever paying again.

The plaintiff did not completely give up on religion, and on 1/5/99, the plaintiff was attending a bible study class at the request of a coworker, who was a leader in his church. After the events of 1/6/99, 1/7/99, 1/8/99, and the 1 and 1/2 months that followed, the plaintiff became very angry. This anger was directed at God. Hardly a day went by over the next 18 months, when the plaintiff did not raise his hand in the air and give God the middle finger, while the Plaintiff was saying Fuck You, Fuck You.

## PARANOIA

Sometime in early February, the plaintiff became suspicious, and had a cousin of his who is a Chicago Police Officer, to run a check on his drivers license, and plates. There was a warrant for the Plaintiffs arrest for missing the court date on 1/6/99, which the Plaintiff had already surrendered for on 1/7/99, and made bail for on 1/8/99.